_____

|

ALBERT ELDER #178185,      |    Case No. 1:05-cv-780

       | 

     Petitioner,          |    HONORABLE PAUL L. MALONEY

       | 

       v.            |    Magistrate Judge Ellen S. Carmody

       | 

MARY BERGHUIS,        | 

       | 

     Respondent.       | 

       | 

_____

### Opinion and Order

**Sustaining the Respondent's Objections Regarding *Batson* Claim's Lack of Merit;
Rejecting the R&R as to *Batson* Claim;**

**Accepting the R&R Without Objection as to All Other Claims and Issues;**

**Dismissing the Habeas Corpus Petition for Lack of Merit;
Issuing a Certificate of Appealability as to the *Batson* Claim;
Declining to Issue a Certificate of Appealability as to Other Claims or Issues;
Terminating the Case**

Represented by counsel Terry Nolan ("Nolan"), Albert Norrese James Elder ("Elder") pled

*nolo contendere* to two drug crimes – PWID 50 grams to less than 225 grams of cocaine and PWID

marijuana – in exchange for dismissal of a charge of possession of a firearm during the commission

of a felony.  On the date scheduled for sentencing in July 2002, however, counsel Nolan failed to

appear, and the court learned the next day that Nolan was suffering from "severe depression" and

feared he was suffering a "nervous breakdown."  The trial court recalled Nolan engaging in

unprofessional conduct many times over the past 5-6 years, and in fact Nolan was arrested that day

on cocaine-possession charges. Elder alleged that when he told counsel Nolan that he wanted to contest the charges at trial, Nolan started crying and said that his (Nolan's) life was ruined, which made Elder feel that he had no choice but accept the plea agreement because he lacked the funds to hire a different defense attorney. The trial court dismissed Nolan, appointed new counsel, and the court granted the parties' joint motion to vacate Elder's previous *nolo contendere* plea. Elder was tried in January 2003, but the court declared a mistrial when the jury was unable to reach a unanimous verdict.

Elder was tried again in March 2003. At *voir dire* (jury selection), the prosecution exercised all six of its peremptory strikes, excluding from the jury three black persons (Lorettia Buggs, Prince Bartee, and Verna Williams), two white persons (Mary Brandel and Donna Long), and one Hispanic person whose race is not specified in the record (Diane Herrera). Upon inquiry by the court, the prosecution confirms that Elder's counsel lodged the *Batson* objections "before the jury was sworn in[1] and before the trial judge had dismissed the members of the jury pool who were not chosen." *See* Doc. No. 40, Respondent's Answer to Court's Limited Factual Question, filed April 16, 2009 (citing Transcript of March 18, 2003 at pp. 167-69 and 182-86 and 190-91).

Following the second trial, the jury convicted Elder of the two drug crimes (the prosecution dropped the firearm charge before the second trial), and his status as a habitual offender led to sentences of 12-30 years on the PWID cocaine conviction plus a consecutive 2-6 years on the PWID marijuana conviction. Elder lodged a direct appeal on a variety of issues, including the claim that the trial court committed reversible error in overruling his *Batson* challenge to the prosecution's peremptory strike of three black jurors and one Hispanic juror of unspecified race. The direct appeal

---

[1] Courts sometimes also say that the jury has been "seated" or "empaneled."

was unsuccessful, and the Michigan Supreme court refused discretionary review. *See People v. Elder*, No. 248287, 2006 WL 562638 (Mich. App. Mar. 10, 2005) (p.c.) (P.J. Schuette, Fitzgerald, Bandstra), *leave to app. den.*, No. 128574, 705 N.W.2d 119, 2005 WL 2850963 (Mich. Oct. 31, 2005) (table).

In November 2005, Elder timely filed the instant petition, asserting seven grounds for federal habeas corpus relief, including the *Batson* claim. The Magistrate Judge recommends that this court (1) refuse to entertain Elder's Fourth Amendment search-and-seizure claim, *see* R&R at 12-13; (2) hold that he properly exhausted his *Blakely* and disproportionate-punishment sentencing claims but that they both lack merit, *see* R&R at 14-22; (3) deny his evidentiary claim on its merits, *see* R&R at 22-24; (4) deny his sufficiency-of-the-evidence claim on its merits, *see* R&R at 24-26; and (5) deny his claim that trial counsel Nolan or successor trial counsel Krueger rendered constitutionally ineffective assistance, *see* R&R at 26-36.

Because Elder has not filed objections with regard to the Magistrate's recommendations on the foregoing habeas claims, the court adopts the R&R without review as to those claims. *See Nottingham v. SSA*, 2009 WL 230131, *2 (W.D. Mich. Jan. 29, 2009) (Maloney, C.J.) (failure to file timely specific objection with respect to a portion of the R&R obviates not only *de novo* review, but *all* district-judge review of that portion of the R&R) (citing *Peretz v. US*, 501 U.S. 923, 939 (1991) ("To the extent *de novo* review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties.") (citation omitted) and *Thomas v. Arn*, 470 U.S. 140, 149-50 (1985) ("We are therefore not persuaded that the statute requires some lesser review by the district court when no objections are filed.")). *Accord Coots v. Astrue*, 2009 WL 1326260 (E.D. Ky. May 12, 2009) (Van Tatenhove, J.) ("When no objections are made, this court is not required to review

magistrate judge's factual or legal conclusions, under a *de novo* or any other standard . . . .")

(citation & quote marks omitted).[2]

## DISCUSSION:
### *Batson* Claim Lacks Merit

The respondent filed timely objections to the Magistrate's suggestion that Elder's

*Batson* claim warrants habeas relief, and this court is persuaded by the objections.

---

[2]

District judges in our circuit have long adopted R&Rs without additional analysis where the parties have not timely and specifically objected. *See, e.g.,*

*Stevenson v. Pramsteller*, 2009 WL 1883878 (W.D. Mich. June 30, 2009) (Bell, J.)
*Banks v. Davis*, 2009 WL 1874093 (W.D. Mich. June 26, 2009)     (Quist, J.)
*Martin v. Smith*, 2008 WL 4151352 (W.D. Mich. Sept. 3, 2008)     (Enslen, J.)
*US v. Bale*, 2008 WL 4534420 (W.D. Mich. Oct. 2, 2008)     (Edgar, J.)

Adoption of uncontested R&Rs without discussion is common throughout our circuit, *e.g.:*

*Allen v. Hudson*, 2009 WL 1649312 (N.D. Ohio June 10, 2009)     (Sara Lioi, J.)
*Schlatter v. Jeffries*, 2009 WL 73736 (N.D. Ohio Jan. 8, 2009)     (Ann Aldrich, J.)
*US v. Josic*, 2008 WL 5234386 (N.D. Ohio Dec. 12, 2008)     (Chris Boyko, J.)
*Hart v. Ridge Tool Co.*, 2007 WL 1983688, *2 (N.D. Ohio 2007)     (Nugent, J.)
*Montalvo v. GMC*, 2006 WL 1888704, *1 (N.D. Ohio 2006)     (Jack Zouhary, J.)

*Wallace v. Jackson*, 2006 WL 467915, *1 (E.D. Mich. 2006)     (Paul Gadola, J.)
*Tangwall v. Robb*, 2003 WL 23142190, *1 (E.D. Mich. 2003)     (David Lawson, J.)
(after untimely objections, court stated, "the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion.")

*Bradberry v. Astrue*, 2009 WL 2027111 (M.D. Tenn. July 8, 2009)     (Wiseman, J.)
*Winston v. Cargill, Inc.*, 2009 WL 1748728 (W.D. Tenn. June 19, 2009)     (Anderson, J.)
*Rose v. Mattrixx Init., Inc.*, 2009 WL 902311 (W.D. Tenn. Mar. 31, 2009)     (McCalla, J.)

*Young v. Simpson*, 2009 WL 798787 (E.D. Ky. Mar. 24, 2009)     (Jennifer Coffman, J.)
("To the extent that the petitioner does not specifically object to the report and recommendation, the court concurs in the results recommended by the Magistrate Judge.").

On *voir dire* for Elder's second trial, the prosecution used peremptory strikes to exclude from the jury three black people (Lorettia [sic] Buggs, Prince [sic] Ella Bartee, and Verna Williams) and one Hispanic person (Diane Herrera, whose race or color is not readily ascertainable from the record). After all peremptory strikes were exercised by both sides, there were sixteen people left in the jury pool, two of whom were black (African-American), *see* Tr 183-85, but the ultimate empaneled jury appeared to contain only white (European-American) people. Elder, who is black, contends that the prosecution exercised the peremptory strikes of the three black and one Hispanic *venire*persons with racially discriminatory intent, violating his federal constitutional right to the equal protection of the laws.

The Magistrate Judge correctly suggests that the Michigan trial court and the Michigan Court of Appeals applied the appropriate legal standard to Elder's *Batson* claim. *See* R&R at 40. As the Magistrate noted, *id.*, that eliminated one of the two possible grounds for federal habeas relief under AEDPA, 28 U.S.C. § 2254(d), a legal determination that was contrary to or unreasonably applied clearly-established federal law. As the Magistrate also correctly noted, R&R at 39-40, this means that Elder is entitled to habeas relief on his *Batson* claim only if he shows that the Michigan courts rested their rejection of that claim on factual findings that were objectively unreasonable in light of the evidence presented to the state courts. *See also Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003).

**When sitting in habeas, this court may not reject a state court's factual finding unless the petitioner rebuts it finding by clear and convincing evidence.** *See Terrell v. Berghuis*, 2009 WL 799082, *3 (W.D. Mich. Mar. 23, 2009) (Maloney, C.J.) (citing *Cornwell v. Bradshaw*, 559 F.3d 398, ____ (6th Cir. 2009) (Gibbons, J., joined by Rogers, J.) (citing 28 U.S.C. § 2254(e)(1))),

*COA den.*, 2009 WL 1873808 (W.D. Mich. June 27, 2009). As our Circuit has explained,

> Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 991 (6th Cir. 2007) (citations to Ohio state-court decisions omitted, internal quotation marks omitted), *cert. denied*, – U.S. –, 128 S.Ct. 1125 (2008). Emphasizing the strength of the deference which federal habeas courts accord to state courts' factual findings, our Circuit has stated flatly "'[t]he [federal] appeals court gives complete deference to the . . . state court's findings of fact supported by the evidence.'" *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (quoting *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004)), *cert. denied*, – U.S. –, 128 S.Ct. 919 (2008); *see also James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (same) (citing *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994)), *reh'g & reh'g en banc denied* (6th Cir. May 15, 2007).

More specifically, the Supreme Court has cautioned that

> [i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence will often be the demeanor of the attorney who exercises the challenge.

*Hernandez*, 500 U.S. at 365. The Supreme Court also holds that "[a]s with the state of mind of a juror, the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Hernandez*, 500 U.S. at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)).

**In *Batson v. Kentucky*, 476 U.S. 79, 96 (1986), the Supreme Court articulated a three-step analysis** to be applied when a criminal defendant claims that the prosecution violated his Equal

Protection rights by intentionally discriminating on the basis of race in the selection of jurors, i.e., through the exercise of peremptory strikes. *Jennings v. Renico*, 2005 WL 2679778, * 19 (W.D. Mich. Oct. 20, 2005) (Bell, C.J.) (citing *US v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002)).

**At the first step of the *Batson* analysis, the defendant must establish a *prima facie* case of racial discrimination in the jury selection.** *Jennings*, 2005 WL 2679778 at *19 (citing *US v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). This requires only a showing that the defendant is a member of a cognizable racial group and the prosecutor has exercised peremptory challenges to remove from the *venire* members of the defendant's race. *Jennings*, 2005 WL 2679778 at *19 (citing *Batson*, 476 U.S. at 96). The state-court trial judge here stated,

> First, the opponent of the challenge must make a prima facie case of discrimination.
>
> It's a very close question. I'm not sure a prima facie case of discrimination has been made out. The prosecutor certainly did not use all his challenges to excuse – I should say, the prosecutor did not us[e] all five peremptory challenges – or I should say six because I did give an extra one to each side. The prosecutor did not use five of his six peremptory challenges to excuse all five African American jurors in the array. Two were excused by [sic] cause.

Reproduced at R&R at 57 (transcript). The Magistrate suggests that the trial judge was wrong on this score, and this court agrees. Elder did cross the very low threshold needed to establish a prima facie case of racially-discriminatory peremptory strikes: Elder is black, which is a cognizable racial group, and the prosecutor exercised peremptory strikes to keep people who are members of that race off the jury. This court does not adopt the Magistrate's *analysis* on the first *Batson* element, however, *see* R&R at 58-60, because it goes beyond what is necessary to conclude that Elder satisfied that rather simple element.

**At the second step of the *Batson* analysis, the burden shifts to the prosecution to come forward with a race-neutral explanation for striking the jurors who were of the defendant's**

**race.** *Jennings*, 2005 WL 2679778 at *20 (citing *Batson*, 476 U.S. at 97). On this score, the trial judge stated, in pertinent part, "Even if the Court were to find that there was a prima facie case of [racial] discrimination, the Court finds that the prosecutor has offered race-neutral reasons . . . for the peremptory challenges being exercised in the manner they were." Reproduced at R&R at 57. The Magistrate suggests that the trial judge was correct to conclude that the prosecutor articulated nominally race-neutral reasons for using peremptory strikes against the three black *venire*persons in question, and this court agrees.

At this second step of the *Batson* analysis, the prosecution is not required to persuade the court that its stated reasons for the peremptory strike(s) was sincere, logical, or factually well-founded. Rather, "'[a]t this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Jennings*, 2005 WL 2679778 at *20 (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (quoting *Hernandez v. NY*, 500 U.S. 352, 360 (1991))). There was no discriminatory intent inherent in the prosecutor's explanations for his peremptory strikes against the three black *venire*persons and one Hispanic *venire*person. Consequently, the trial court was obliged to presume that the explanations were true until and unless rebutted by the defendant at the third step of the analysis.

**At the third step of the *Batson* analysis, the party opposing the peremptory strike must demonstrate that the prosecutor's asserted reasons for striking the jurors in question were merely a pretext for racial discrimination.** *Jennings*, 2005 WL 2679778 at *20 (citing *McCurdy v. Montgomery Cty.*, 240 F.3d 512, 521 (6th Cir. 2001)). "'The question of whether a prosecutor

intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact.'" *Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009) (Griffin, J.) (quoting *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (citation omitted)).

In making this determination, the court must presume that the facially valid reasons proffered by the prosecution are true. *Jennings*, 2005 WL 2679778 at *20 (citing *Hernandez*, 500 U.S. at 359-60). To overcome this presumption, the party opposing the peremptory strikes must "affirmatively show" that the prosecution was motivated by a racially discriminatory purpose or intent. *Jennings*, 2005 WL 2679778 at *20 (citing *Hernandez*, 500 U.S. at 360). The Magistrate Judge suggests that Elder satisfied this third part of the *Batson* test and thus is entitled to a writ of habeas corpus. This court respects the Magistrate's thoughtful analysis but disagrees.

**As to the prosecution's first peremptory strike against a black juror, Ms. Buggs, the Magistrate wrote as follows,**

> The prosecutor exercised his first peremptory challenge to excuse Vincent Levandowski [a person of unknown race who is not a subject of Elder's habeas petition], who acknowledged during *voir dire* that he had previously been convicted of a drug offense. (Tr. 19, 66-69, 12).
>
> **The prosecutor exercised his second peremptory challenge to excuse Lorettia Buggs [a black woman who is a subject of this habeas petition].** (Tr. 119-20). As noted above, Buggs did not say anything during voir dire that would seem to have legitimately disqualified her to serve as a juror. When challenged as to why he excused Buggs, the prosecutor stated that it was based on a "gut feeling" that "something didn't feel right with her." (Tr. 174). The Court recognizes that it is difficult to successfully challenge a peremptory challenge exercised because of a "juror's demeanor." *See Snyder* 128 S.Ct. 1208. The Court must likewise be mindful, however, that to simply accept without question such [a] general and vague rationale would render the Equal Protection Clause "a vain and illusory requirement." *Batson*, 476 U.S. at 98.[3]

---

[3]

The R&R states that the prosecution exercised a peremptory strike against Diane Leafers, a person of unknown race who is not a subject of Elder's petition. *See* R&R at 60-61 (citing Tr.

R&R at 60. The Magistrate makes a good point, in the sense that the clear error standard of review cannot become so deferential as to be supine. On a proper record, federal habeas courts should not feel that they can *never* overturn a state court's factual finding.

It is also the case, however, that a reviewing court should not lightly second-guess a trial court's credibility assessment. There are at three reasons why reluctance by the reviewing court is especially appropriate here. First, on federal habeas review, AEDPA places even more emphasis on the high level of deference due factual findings. Second, an inclination towards deference to the trial judge's factual finding is consonant with the very nature of a peremptory challenge:

> The nature of a peremptory strike, which, by definition means "[n]ot requiring any shown cause; arbitrary," BLACK'S LAW DICTIONARY 1157 (7th ed. 1999), allows both the prosecutor and the defense counsel to remove a potential juror from the panel based entirely on his or her *instinct or gut feeling* that an individual would not be a favorable juror.

*Smulls v. Roper*, 535 F.3d 853, 858 (8th Cir. 2008) (emphasis added), *pet. cert. filed on other grounds* (U.S. Nov. 26, 2008) (No. 08-7465); *accord US v. Willis*, 523 F.3d 762, 768 (7th Cir. 2008) ("under the American legal system counsel for both parties have a limited number of peremptory strikes to use *according to their individual intuitions regarding [potential] jurors*.") (emphasis added); *Majid v. Portuondo*, 428 F.3d 112, 125 (2d Cir. 2005) (affirming denial of *Batson* claim by district court which had stated, "although many reasons given by the prosecution may seem trivial or contrived, the selection of juries is notably a matter of art in which an intuitive lawyer's choices

---

March 18, 2003, at 19 and 125). The respondent states that in fact, the *defense* exercised a peremptory strike against Leafers, presumably because she had stated at voir dire that she was employed as a secretary for the Muskegon Police, Tr 27 – notwithstanding her insistence that she would be able to follow the court's instructions concerning the matters she could consider when evaluating a witness' truthfulness, Tr. 55. The Magistrate's apparent factual error on this score does not affect this court's review of the R&R.

of who might be amenable or hostile are often critical to the outcome" and "*some room for* emotion and *intuition by the lawyer remains*") (internal quotation marks and brackets omitted), *cert. denied sub nom. Majid v. Smith*, 549 U.S. 863 (2006). State trial judges are obligated to police *voir dire* diligently, of course, to ensure that these supposed "gut feelings" and "intuitions" do not mask unconstitutional racial discrimination. But a federal habeas court must not be too quick to conclude that the state court clearly failed in that task.

The third reason that deference to the state court's factual finding is especially appropriate here is that Elder fails to show by clear and convincing evidence that any of the prosecutor's *other* peremptory strikes were motivated by racial discrimination. Thus, this court cannot find, contrary to the state trial court, that there was a pattern of racial discrimination by the prosecutor which should have foreclosed the trial judge giving the prosecutor "the benefit of the doubt" as to his challenge of Ms. Buggs.

Finally, during *voir dire*, immediately after propounding a question concerning the ability to make credibility determinations, the prosecutor remarked to Ms. Buggs, "You're looking at me kind of funny, Ms. Buggs", and she replied, "I don't know, I'm just listening." Tr 56. Neither the Magistrate nor this court had an opportunity to observe how Buggs was acting and looking at the prosecutor, but both the prosecutor and the trial judge did. As the Supreme Court has emphasized, an assessment of "'the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.'" *Harris v. Haeberlin*, 526 F.3d 903, 912 (6th Cir. 2008) (Cole, J., joined by Griffin, J.) (quoting *Hernandez v. NY*, 500 U.S. 352, 365 (1991)). The prosecutor formed a suspicion about Buggs' impartiality towards the prosecution based on the very subjective but important assessment of her facial expression, and Elder presents no basis for this court to override

the trial court's finding that it was this suspicion which motivated him to strike Buggs, not racial discrimination. *See, e.g,, Kelly v. Withrow*, 822 F. Supp. 416, 422 (W.D. Mich. 1993) (Gibson, C.J.) (in reviewing state trial court's finding that prosecutor's use of peremptory was not motivated by racial discrimination, federal habeas court applied the principle that "where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."), *aff'd*, 25 F.3d 363 (6th Cir. 1994).

**As to the prosecution's second peremptory strike against a black juror, Ms. Bartee, the Magistrate wrote as follows:**

> The prosecutor exercised his fourth peremptory challenge to eliminate Prince Ella Bartee [a black woman who is a subject of this habeas petition]. (Tr. 128). As indicated above, none of Bartee's responses during voir dire establish a legitimate basis for disqualification. The prosecutor nevertheless eliminated Bartee despite her assurance that she was able to serve as a "fair and impartial juror." The prosecutor stated that he excused Bartee because "the Bartee name is well known in Muskegon, having many contacts with the police." (Tr. 172). The prosecutor also expressed concern about unspecified "hidden agenda" to which Bartee might subscribe. (Tr. 172-73).
>
> Despite the allegation that "a lot of Bartees have been charged, a lot of Bartees have been convicted in this county," (Tr. 173), the prosecutor never identified any crime of which any Bartee had allegedly been charged or convicted. The prosecutor never questioned Bartee to determine whether she was related to, knew, or associated with any of the other Bartees who allegedly have run afoul of the law in Muskegon County. The prosecutor's failure to question Bartee about these matters suggests that such were simply irrelevant to his decision to eliminate Bartee as a juror.

R&R at 61-62 (paragraph break added). It is true, as the Magistrate would have it, that the state trial judge *might* have reasonably inferred that the prosecutor's failure to question Bartee in detail about her relationship and associations with the criminals named Bartee in Muskegon County revealed that those possible associations were not his real concern. But that certainly does not mean that the record *compelled* the state trial judge to draw that conclusion. Even on direct review, the deference

accorded to a trial judge's factual findings might cause this court to uphold the finding with regard to the motive behind the strike of Bartee. On *habeas* review, AEDPA's strong presumption in favor of a state court's factual findings makes deference to that court even more appropriate. Elder has not presented the required "clear and convincing" evidence that the state court erred in finding that the prosecution truly excused Bartee because of the numerous convicted criminals of that name in Muskegon County. This is especially true where a plausible alternative explanation presents itself: the prosecutor, knowing that he would be making his case to those in the jury pool who were ultimately empaneled, might not want to risk alienating or offending them by the perception that he was "picking on" Bartee.

Next, the prosecution confirms that there was a solid factual basis for the prosecutor's statement that many Bartees had been convicted in Muskegon County:

> [A] quick search of the Michigan Department of Corrections Offender Tracking Information System (OTIS) * * * indicates that of the nine Bartees listed serving either current or previous sentences with [MDOC], six had convictions from Muskegon County. These individuals were: Deangelo Bartee, Edward Bartee, James Bartee, Nashika Bartee, Perry Bartee, and Quincy Bartee. Deangelo, James, and Perry [Bartee] had been convicted and sentence prior to Petitioner's first and second trials. Quincy Bartee had committed an offense in February 2003 – prior to Petitioner's second trial.

Government's Objection at 14 n.7. If Elder wished to dispute the accuracy of this evidence, he could and should have filed a response to the prosecution's objections; he did not, and cannot be heard to complain later that this evidence was inaccurate.

Nonetheless, out of an abundance of caution, the court visited the web-page cited by the government, *http://www.state.mi.us/mdoc/asp/otis2.html*, and searched by the last name (family name) Bartee. On March 20, 2009, this search yielded results that are completely consistent with the prosecution's claim. MDOC lists four "active offenders" with the family name Bartee, all of

whom are described as racially "black." Both James Bartee (Offender #316425) and Nashika Bartee (Offender #516369) are listed at the location "Muskegon Prob." The other two active offenders named Bartee are Clarence (Offender #595645), who committed his crime in Genesee County and is located at Deerfield CF, and Sharelle (Offender #625992), who committed his crimes in Genesee County and is located at the Egeler Reception and Guidance Center. MDOC's public database also lists five other (not "active") prisoners with the family name Bartee, of whom four are described as black: Deangelo (Offender #277133, two convictions for crimes committed in Muskegon County), Edward (Offender Numbers 435317 and 917400, two convictions for crimes committed in Muskegon County), Perry (Offender #212076, with one conviction for a crime committed in Muskegon County), and Quincy (Offender #523214, with one conviction for a crime committed in Muskegon County). This confirms the accuracy of the prosecutor's statement that many Bartees had been charged and convicted in Muskegon County, which in turn could give the prosecution legitimate cause for concern about Bartee's possible bias against law enforcement / prosecution without regard to Bartee's race. There is no basis for this court to second-guess the assessment of the trial judge that Prosecutor Hilson was in fact motivated by that concern when he struck Bartee from the jury – particularly because the judge based that assessment on his observation of the prosecutor at *voir dire*, and perhaps also on his familiarity with that prosecutor, and with some of the Bartees from his county convicted of felony crimes.

The Magistrate also found it significant that "the prosecutor dismissed Bartee due to unsubstantiated concerns about her *alleged* relationship to or association with criminal offenders to whom she was *presumably* related, [yet he] exhibited no such qualms about white jurors who acknowledged having family members with a history of drug use." R&R at 62. The Magistrate

gave the example of Donna Long, a white woman who said that her son had had a serious drug problem, and Mary Brandel, a white woman who said that a close member of her family, with whom she had daily contact, had a serious drug problem that "possibly" could affect her "thinking" in this matter. R&R at 62 (citing Tr 19, 84, 85, and 136-37).

The prosecution did not exercise peremptory strikes against Ms. Long or Ms. Brandel, so the Magistrate reasoned that "[w]here a prosecutor excuses a minority juror based on a rationale that applies with equal (or greater) force to a white juror, such demonstrates the 'implausibility' of the prosecutor's contention that he did not engage in purposeful discrimination in violation of *Batson*." R&R at 62 (citing *Snyder*, 128 S.Ct. at 1211). This principle is logical and supported by the precedent that the Magistrate cites, but it simply does not apply here. Neither Elder nor the Magistrate has identified any rationale asserted by the prosecutor for striking Bartee that "applies with equal force" to the two white women mentioned above whom he did not strike. Unlike the Bartees of Muskegon County, there was no testimony before the state trial court, nor has Elder made any allegation since, that Donna Long's son or Mary Brandel's "close" family member were ever charged, let alone convicted and imprisoned, for their alleged drug activities. Absent even a suggestion that related or potentially-related Longs or Brandels had any contact with the criminal-justice system, that plausible basis for suspecting anti-law enforcement bias on the part of Long and Brandel was lacking. Thus, Donna Long and Mary Brandel were not similarly situated to Ms. Bartee with regard to the rationale the prosecutor advanced for striking Bartee, so his treating them differently is not necessarily suggestive of racial discrimination.[4]

---

[4]

As the government correctly notes, *see* Objections at 16, neither Elder nor the R&R identifies any juror whose family name was associated with criminal activity in Muskegon County at the time of *voir dire* as Bartee and Herrera.

**As to the prosecution's only peremptory strike against a Hispanic *venire*person, the Magistrate wrote as follows:**

> The prosecutor used his fifth peremptory challenge to excuse Diane Herrera. (Trial Transcript, March 18, 2003, [at] 116, 137-38). The prosecutor indicated that he excused Herrera because "the Herrera name is well known here in Muskegon County." (Tr. 175). Specifically, the prosecutor asserted that Santiago Herrera and Carlos Herrera "had - have pending and had pending CSC [criminal sexual conduct] charges." (Tr. 175). Noting that Diane Herrera acknowledged that she had "heard about Carlos Herrera's brush with the law," the prosecutor again expressed his concern about "hidden agenda" to which Herrera might subscribe. (Tr. 175-76). The prosecutor further stated that "it was one of those things where [Herrera] has known contact with individuals [who] are being prosecuted or have been prosecuted." (Tr. 176).
>
> Diane Herrera stated that she was "only a Herrera by marriage." (Tr. 117). Diane Herrera indicated that she was not related to Santiago Herrera, (Tr. 117), and she made no comments indicating that she ever associated with or spoke with Santiago Herrera. With respect to Carlos Herrera, Diane Herrera indicated that Carlos was her husband's cousin, but that she did not associate or speak with him. (Tr. 130-31). Thus, the prosecutor's stated rationale that he excused Diane Herrera because she has contact with "individuals that are being prosecuted or have been prosecuted" enjoys no support in the record. * * *

R&R at 62-63. This reasoning is untenable.

Given Diane Herrera's admission that criminal suspect Carlos Herrera was related to her husband and that she knew about his trouble with the law, this court is in no position to hold, as a matter of law, that the prosecutor *could not have* sincerely formed a suspicion that she would be biased against law enforcement and hence, against the prosecution. Even taking Herrera's testimony at face value, it was enough for a non-racially-discriminatory prosecutor to form that suspicion, and it was up to the trial judge, from his unique vantage point observing both Herrera and the prosecutor, to assess (1) whether the prosecutor actually had formed that suspicion and (2) if so, whether that suspicion, and not racial discrimination, actually motivated the prosecutor's peremptory strike of Herrera.

In addition, the R&R seems to imply that because Diane Herrera said she was "only a Herrera by marriage," the prosecutor could not have sincerely believed that she would lie (about her associations with Carlos Herrera and Santiago Herrera) or vote to acquit Elder in order to exact revenge on police or prosecutors or "the system." Such an inference cannot stand. The record *permitted* the trial judge to find that because Diane Herrera was only a Herrera by marriage, she was less likely to harbor bias against law enforcement, and act on that bias, than she would if the criminal-suspect Herreras were her blood relatives. In turn, the record permitted the trial judge to then find that the prosecutor had privately reached the same conclusion, i.e., he did not really fear that Herrera had an anti-law-enforcement bias. But neither Elder nor the R&R explains how the record *compelled* a reasonable trial judge to follow that line of reasoning.

Moreover, the Magistrate seems to take the position that while we cannot assume the prosecutor was telling the truth – and in the R&R's view, should not even defer to the state court's finding that he *was* – the prosecutor and the trial judge were somehow obligated to assume that *Diane Herrera* was telling the truth when she claimed that she did not associate with or speak to Santiago or Carlos Herrera. That is not tenable, either. The trial judge and the prosecutor, having observed Diane Herrera's demeanor and body language and heard her tone of voice, could have concluded, without racial animus or other constitutional infirmity, that she was not telling the whole truth. As our Circuit recently reaffirmed, "'body language and demeanor are permissible race-neutral justifications for the exercise of a peremptory [challenge].'" *Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009) (Griffin, J.) (quoting *McCurdy v. Montgomery Cty.*, 240 F.3d 512, 521 (6th Cir. 2001), *overruled o.g. by Barnes v. Wright*, 449 F.3d 709, 718-20 (6th Cir. 2006)).

In any event, in order for the prosecutor to form the belief that it was in the People's interest,

and the interest of an impartial jury, to exclude Herrera, he did not need to confidently believe that she was lying, let alone to *know* or *prove* that she was lying.  As a trial lawyer, the prosecutor merely needed to have enough instinctive doubt about Herrera's truthfulness that he found it unwise to risk affording her an opportunity to act on her possible anti-law enforcement bias as a juror.  *See Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009) (Griffin, J.) ("The fact that a prosecutor's reasons may be founded on nothing more than a trial lawyer's instincts about a prospective juror does not diminish the scope of acceptable invocation of peremptory challenges . . . .") (citation to 9th Cir. omitted).  By finding that the prosecutor struck Herrera for the stated concern of anti-law enforcement bias rather than due to racial discrimination, the trial judge necessarily found that the prosecutor actually held such a concern.  Elder has not shown that such finding was objectively unreasonable in light of all the facts and circumstances.

**As to the prosecution's third peremptory strike against a black juror, Verna Williams, the Magistrate conceded that** "[a] review of the statements Williams made during voir dire indicate that it was perhaps not unreasonable for the prosecutor to seek her elimination from the jury panel." R&R at 63.  But the Magistrate goes on to say,

> It must be remembered, however, that the question is not whether the prosecutor was justified in excusing Williams from the jury.  Instead, the question is whether the prosecutor exercised his peremptory challenges in a racially discriminatory manner. In this respect, the Court notes that the rationale the prosecutor articulated for eliminating Verna Williams applied with equal force to [white juror] Mary Brandel. That the prosecutor chose to eliminate Williams, the last remaining African-American on the juror panel, while allowing Brandel to remain[,] further supports Petitioner's position.

R&R at 63-64.  This is not a completely accurate characterization, because it overlooks substantial, material differences between the *voir dire* testimony of Williams and that of Brandel.

Brandel was questioned before Williams.  When asked whether any of her answers would

have been different from the majority of the original *venire* pool, Brandel said simply "no." By contrast, Williams answered "they [her answers] may vary [from those of the other *venire* persons]." On follow-up questioning, Williams explained that she "can't say for sure" whether her two brothers' involvement with illegal drugs made her biased. On further questioning, Williams still said, "It may be. I don't – I ain't exactly sure." Tr 140-41. Such vacillation hardly inspires confidence in Williams' own ability to be impartial rather than hold a grudge against law enforcement.

Second, Brandel also stated that although some of her relatives had had contact with the police, that did not affect her ability to fairly consider testimony from police. Brandel did reveal that she had a close family member with a serious drug problem, and she first stated that this could "possibly" affect her thinking in the case. But despite this initial hesitation, Brandel ultimately stated unequivocally that she could be fair and impartial notwithstanding her relative's drug problem. Brandel also stated that she had not personally had any negative experiences with the police. *See* Tr 134-37. By contrast, when Williams was asked whether there were any other areas where her answers might be different from the majority of the *venire* persons, she replied "situations dealing with police," and she agreed with the trial judge that she had "strong attitudes towards the police" that were, she claimed, both positive and negative. Tr 141.

Significantly, whereas Brandel concluded with an unequivocal statement of confidence that she could be impartial, Williams did not. To put it mildly, Williams's answers could have been less than reassuring to a non-discriminatory prosecutor – or to anyone desiring an impartial jury that reaches a verdict based solely on the evidence. Williams stated that her attitudes towards the police would "not necessarily" influence how she viewed police testimony and that she didn't "think" she

"would be biased." Tr. 141-42.  Likewise, after expressing the opinion that she had seen the police do an inadequate job dealing with situations in her neighborhood and that "they never do" come on time when called, Williams said that these experiences would "not necessarily" cause her to be biased against the police before they even testified.  Finally, when asked whether her two drug-involved brothers had any criminal cases pending, Williams answered "Not at this time." Tr 142-47. That is an unusual and awkward answer for someone to give if her brothers had never been prosecuted.  Such a technical and careful answer could suggest that her brothers indeed had been prosecuted, giving her additional reason to dislike and be biased against police and prosecutors.

Williams's response to these questions diverged markedly from Brandel's in ways that could reasonably lead the prosecutor to conclude that Williams posed an unacceptable risk of anti-prosecution bias while Brandel did not.  Both stated that their relatives' experiences with the police might impair their ability to be impartial, but only Brandel satisfactorily dispelled the resultant concern that she might have an ax to grind with the police.  In turn, that would make it more plausible to the trial judge that the prosecutor's peremptory strike of Williams but not Brandel was motivated by different levels of concern for bias, not by racial animus.  *Cf. Cook v. La Marque*, 2006 WL 2406230, *12 (E.D. Cal. Aug. 18, 2006) ("[T]he overriding inference is that this juror might have an ax to grind *per se* with law enforcement[,] with this juror voting 'not guilty' to rectify in her mind, in the only way possible, the perceived injustice done to her brother.  There is no doubt from . . . the juror's own statements that she had certain, but indecipherable, problems with the criminal justice system, [and] that the prosecutor's actual state of mind focused on this factor and not race.").

When Elder's counsel noted that the prosecutor had struck Williams (black) but not Brandel (white) even though both had family members with drug problems, the prosecutor responded that

he had stricken Williams because of the confluence of two worrisome factors – the relatives with drug problems *and* the potential for bias against the police – not just the first factor. The prosecutor reasoned that Brandel's testimony about her experiences with and feelings about police had not demonstrated the same potential for bias against the police as Williams. Elder has not shown that it was clear error for the trial judge to credit this quite-plausible explanation for striking Williams and not Brandel.[5]  *Cf. Luckett v. Kemna*, 203 F.3d 1052, 1054-55 (8th Cir. 2000) ("[T]he record demonstrates that the prosecutor had race-neutral reasons for the challenges. The prosecutor justified his peremptory challenges of African-American *venire*persons as follows: one had been arrested and his cousin had been shot by the police; another had a nephew who was incarcerated; another *had a grudge against police officers due to* the nature of *her brother's arrest*; another had a cousin who had been convicted of burglary and had been harassed by the police . . . .") (citing, *inter alia*, *Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (relative in jail) and *US v. Wiggins*, 104 F.3d 174, 176 (8th Cir. 1997) (juror and his relative had prior contacts with criminal-justice system)).

**Next, the Magistrate remarks that while the strikes against Buggs and Williams are "perhaps a closer call"** than the strikes against Bartee and Herrera, it was unreasonable for the trial court to find that the prosecutor's strikes against Buggs and Williams were motivated by the

---

[5]

In addition, by the time the prosecution reached Brandel, it had only one peremptory strike left (an "extra", sixth strike which the trial judge gave each side after an empaneled juror, Delores Bray, was excused due to extraordinary hardship). If the prosecution used its last strike against Brandel, it would have been unable to do what it did, which was strike another prospective juror who raised serious concerns. The other juror, Kaffenberger, stated that she had been confined in a mental institution, and the prosecutor stated that she still sounded like "somebody who wasn't all there" when she answered his questions. *See* Tr 159-63 and 178-79. The trial judge could reasonably find that this too is a plausible explanation for the prosecutor's decision not to strike Brandel even though she posed *part* of the risk of anti-police bias that Williams posed.

prosecution's asserted non-discriminatory concerns.  R&R at 65.  The Magistrate reasons that because the record compels the conclusion that Bartee and Herrera were stricken because of their race, that "fact" tips in favor of holding that the trial court also acted unreasonably in finding that the prosecutor's strikes against Buggs and Williams were motivated by the prosecution's asserted non-discriminatory concerns.  Because this court holds that the trial court did not clearly err in accepting the prosecution's stated reasons for striking Bartee and Herrera, their exclusion cannot "tip the scales" against the trial court's acceptance of the prosecution's stated reasons for striking Buggs and Williams.

More broadly, Elder has not suggested that any of the other people who served on his jury had a *combination* of family history and comments about bias against law enforcement comparable to Williams's.  *Cf. Moore v. Mitchell*, 531 F. Supp.2d 845, 899-900 (S.D. Ohio 2008) (Dlott, J.) (petitioner complained that prosecution struck black *venire*person who said that her uncle had been a public defender but did not strike white juror who said that his close friend was a public defender; *Batson* claim failed because unlike the excluded black *venire*person, "the white juror did not identify any concerns about childhood alcohol or drug use in his questionnaire, the justification that the prosecutor stated was most significant to him."), *COA granted in part & denied in part*, 2008 WL 5234381 (S.D. Ohio Dec. 12, 2008); *Oloba-Aisony v. Scribner*, 2008 WL 1777220, *44 (C.D. Cal. Apr. 3, 2008) ("[A] comparative analysis belies the existence of a *prima facie* case [of impermissible race-based peremptories].  Nothing in the record shows that any of the jurors who served on Petitioner's jury expressed doubt in their ability to be fair, as did [excluded black] juror No. 10, or questioned whether they could decide the case on the evidence, as did [excluded black] juror No. 5.").

In sum, the R&R seems to commit the same error as the Ninth Circuit in *Rice v. Collins*, where the Supreme Court acknowledged that the record could have given the trial court "reason to question the prosecutor's credibility regarding [a juror]'s alleged improper demeanor" but nonetheless reversed the grant of habeas relief. *See Rice v. Collins*, 546 U.S. 333, 341 (2006). The Supreme Court stressed that

> [t]hat does not, however, compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications . . . *Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.*

*Id.* at 341-42 (emphasis added); *accord Coulter v. McCann*, 484 F.3d 459, 469 (7th Cir.) (although the prosecutor's rationale for peremptory strike was subject to criticism or disagreement, that did not mean that the federal habeas court could override the state court's finding that the stated rationale was the real motivation behind the strike), *cert. denied*, – U.S. –, 128 S.Ct. 400, *reh'g den.* – U.S. –, 128 S.Ct. 739 (2007). Under AEDPA, the standard of review is not *de novo*, so it is irrelevant what this court or the Magistrate might find about the prosecutor's credibility if that decision were entrusted to us in the first instance. *Cf. Ruiz v. Birkett*, 2008 WL 4372846, *26 (W.D. Mich. Sept. 23, 2008) (Maloney, C.J.), where this court emphasized that for a habeas petitioner to succeed on an ineffective-assistance-of-counsel claim,

> "he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner."

*Id.* at *26 (quoting *Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006) (quoting *Bell v. Cone*, 535 U.S. 685, 698-99 (2002)), *cert. denied*, 549 U.S. 1127 (2007)).

AEDPA does not authorize this court to grant habeas relief unless Elder rebuts the state trial judge's factual finding (regarding the intent behind the prosecutor's peremptory strikes) by clear and convincing evidence. Our Circuit defines that as evidence "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established,'" *Terrell*, 2009 WL 799082 at *3 (quoting *Chicago Title Ins. Corp.*, 487 F.3d at 991), *recon. o.g. denied*, 2009 WL 1506709 (W.D. Mich. May 27, 2009). Elder has not carried this burden, because this court certainly does not have a "firm belief" that the prosecution's asserted lawful reasons for the peremptory strikes were a pretext for racial discrimination. The *Batson* claim must be dismissed on its merits along with his other claims.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (Paul L. Maloney, C.J.) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479 (2009), *rev'd o.g.*, – U.S. –, 129 S.Ct. 1481 (2008)). To satisfy this standard, "the petitioner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are 'adequate to deserve further review.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Butz v. Berghuis*, 2009 WL 33462, *6 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)) and *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir.) (p.c.) (Siler, Cole, Cook) (citing *Banks*, 540 U.S. at 674),

*cert. denied*, – U.S. –, 129 S.Ct. 1057 (2009))

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability. *Colwell v. McKee*, 2009 WL 125223, *3 (W.D. Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001))). Rather, this court "must 'engage in a reasoned assessment of each claim' to determine whether a certificate is warranted." *Oatis v. Caruso*, 2009 WL 80347, *4 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) (citing *Murphy*, 263 F.3d at 467).

The court will issue Elder a COA on his *Batson* claim, because other reasonable jurists could disagree with the determination that his *Batson* claim does not warrant federal habeas relief. It seems unlikely that our Circuit would find that Elder presented clear and convincing evidence showing that the trial court's findings regarding the motivation behind the peremptories were objectively unreasonable, as required by AEDPA. But the issuance of a COA does not require a showing that the losing party is likely to succeed on appeal. *Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337)). Elder's *Batson* arguments are unpersuasive, but they are "adequate to deserve further review."

## ORDER

Accordingly, having reviewed the habeas corpus petition, the respondent's answer to the

petition, the R&R and the respondent's timely objections, and the respondent's supplemental filing:

The respondent's objections [document # 33] are **SUSTAINED**.

The R&R [document # 32] is **ADOPTED in part** and **REJECTED in part**:

– the R&R is rejected as to the *Batson* claim;

– the R&R is adopted without objection as to all other claims.

The habeas corpus petition [doc. # 1] is **DISMISSED for lack of merit.**

This case is **TERMINATED** and **CLOSED**.

This is a final order.

The court issues a certificate of appealability as to the *Batson* claim alone.[6]

The court declines to issue a certificate of appealability on any other claim or issue.[7]

**IT IS SO ORDERED this 21st day of July 2009.[8]**


/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

_____

[6]

The Circuit will review this court's legal conclusions *de novo* but its factual findings only for clear error. *See Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009) (Griffin, J.).

[7]

The refusal to issue a COA as to the non-*Batson* issues is not appealable. *See Torres v. Davis*, 2009 WL 613550, *4 n.5 (W.D. Mich. Mar. 9, 2009) (Maloney, C.J.) (citing, *inter alia*, *Sims v. US*, 244 F.3d 509, 509 (6th Cir. 2001) ("[A]n order denying a certificate of appealability is not appealable."), *followed by Crowley v. Renico*, 81 F. App'x 36, 37 (6th Cir. 2003) and *US v. Badru*, 2008 WL 1683113, *1 (D.C. Cir. July 27, 2004) (p.c.) (Rogers, Tatel, John Roberts)).

[8]

This order does not prevent Elder from seeking a COA from the U.S. Court of Appeals for the Sixth Circuit under FED. R. APP. P. 22. *See Wilson v. US*, 287 F. App'x 490, 494 (6th Cir. 2008) ("If the district judge denies a COA, a request may then be made to a court of appeals . . . .") (citing *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997)).